IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVAN JOSEPH MULLER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Civil Action 19-135 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| | ) | |
| Defendant. | ) | |

AMBROSE, Senior District Judge.

## **OPINION AND ORDER**

### **Synopsis**

Plaintiff Evan Joseph Muller ("Muller") applied for a period of disability and disability insurance benefits ("DIB") in August 2015. (R. 15) He alleged an onset of disability beginning in January of 2015. (R. 15) He was represented by counsel at a hearing before an Administrative Law Judge ("ALJ"), during which both he and a vocational expert ("VE") appeared and testified. (R. 15) Ultimately, the ALJ denied benefits. Muller subsequently filed a Request for Review with the Appeals Council. The Appeals Council denied the request for review. He then filed this appeal. The parties have filed Cross-Motions for Summary Judgment. *See* ECF Docket Nos. 9 and 15.

### **Opinion**

1. Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records on which a determination of the Commissioner is

1

based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson,* 402 U.S. at 390, 91 S. Ct. 1420.

A district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.,* 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are

supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

   II. The ALJ's Decision

The ALJ denied benefits at the fifth step of the analysis. More specifically, at step one, the ALJ found that Muller has not engaged in substantial gainful activity since the alleged onset date. (R. 17) Although the record documented earnings after that date, the return to work was unsuccessful. (R. 17) At step two, the ALJ concluded that Muller suffers from the following severe impairments: obesity, affective disorder, anxiety disorder, and dizziness of undetermined etiology / disequilibrium syndrome. (R. 18) At step three, the ALJ determined that Muller did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-19) Between steps three and four, the ALJ decided that Muller had the residual functional capacity ("RFC") to perform light work with certain restrictions. (R. 19-23) Ultimately, at the fifth step of the analysis, the ALJ concluded that, considering Muller's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that he could have performed. (R. 23-24)

   III. Discussion

Muller challenges the ALJ's formulation of the RFC, particularly in how the ALJ assessed the medical opinions relating to his disequilibrium disorder.[1] A claimant's RFC consists of "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir.

---
[1] Muller makes no mention of his other impairments (obesity, affective disorder or anxiety).

2010), *quoting, Burnett v. Comm'r. of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations, and description of his / her limitations. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The regulations provide that for claims, such as Muller's, that were filed before March 27, 2017, a treating physician's opinion should be given "controlling weight" provided that the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence of record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). *See also, Fargnoli*, 247 F.3d at 43. "The ALJ may not reject a physician's findings unless she first weighs the findings against other relevant evidence and explains why certain evidence has been accepted and other evidence rejected." *Scandone v. Astrue*, Civ. No. 05-4833, 2011 WL 3652476, at * 7 (E.D. Pa. Aug. 18, 2011). Of course, "'[t]he law is very clear … that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.'" *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 20111), *quoting, Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). Additionally, opinions proffered by state agency medical and psychological consultants merit significant consideration as well because they are considered experts in the Social Security disability programs. *Chandler*, 667 F.3d at 361, *citing*, 20 C.F.R. §§ 404.1527(f), 416.927(f).

Here, the ALJ found that Muller had the RFC to perform:

Light work as defined in 20 C.F.R. 404.1567(b), except that he must avoid all exposure to unprotected heights, dangerous machinery, and other similar workplace hazards, and is limited to low stress work, defined here as work requiring: only routine, repetitive tasks; only occasional judgment, decision-making, and workplace changes; and only occasional interaction with coworkers, supervisors, and the public.

(R. 19) In so finding, the ALJ explained that: Muller had no prescribed medication or focused treatment for nearly two years prior to the date of the hearing; no treating or examining source had placed restrictions on him driving a motor vehicle; his primary care physician Dr. Snyder recommended that he participate in vocational rehabilitation for a return to a job other than his past work; Dr. Kasdan, an examining neurologist, found that he could perform work such as a desk job; and that unremarkable diagnostic and clinical findings showed no neurological deficits during the time period at issue. (R. 21)

His findings in this regard are supported by substantial evidence of record. For instance, as the ALJ stated, Muller's vestibular, audiological and cardiac testing were negative. (R. 20, 246, 428-29, 582) The MRI of Muller's brain was normal. (R. 20, 586, 604) Further, Muller consistently presented at neurological examinations with a stable gait, normal balances and reflexes, full normal strength and full range of motion. (R. 207, 309, 332, 349, 370, 385, 447, 462, 479, 511, 525, 543, 552, 568, 587, 590, 595, 605, 633, 658, 691) Additionally, as the ALJ noted, Muller's headaches essentially resolved with medication and his symptoms improved. (R. 20, 238, 306, 310, 604, 609) Further, Muller had not been to his neurologist or to another specialist for approximately 18 months at the time of the hearing, nor was he taking any medication. (R. 21, 36)

These findings also support the ALJ's treatment of the medical opinions. The ALJ gave "some weight" to Dr. Snyder's opinion. Dr. Snyder repeatedly advised Muller to seek vocational rehabilitation and suggested that he might be able to work at a desk job. (R. 653, 658, 692) Yet Dr. Snyder never proffered an opinion that contained

5

functional limitations. To the extent that the ALJ treated the medical absentee "excuses" as opinions, he correctly discounted her statements that Muller was "disabled" due to his impairments. The ALJ, rather than the treating or examining physician, makes the ultimate disability finding. *Chandler v. Comm'r. of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011). Further, Dr. Snyder said, at most, that Muller was incapable of performing his *prior* work in a mill environment because it would pose a safety risk to himself and others. (R. 612)[2]

I reach a similar conclusion with respect to the ALJ's treatment of Dr. Kasdan's opinion. Dr. Kasdan, who performed an independent medical examination, found Muller to be "mildly symptomatic" upon presentation. (R. 595) He described Muller's gait and balance as normal and commented that Muller drives. (R. 595) He noted Dr. Synowiec's conclusion that Muller is unable to maintain regular work due to his condition but did not endorse her conclusion. Rather, he stated that he "could not argue" with Dr. Snyder's opinion that Muller could work at a desk job. (R. 595) The ALJ gave Kasdan's opinion "some weight." (R. 22) For the reasons set forth above, the ALJ properly discounted any statement Kasdan made regarding Muller's disability because such a decision is solely within the province of the ALJ. Further, as the ALJ noted, the medical records indicated that Muller did not show imbalance, incoordination, or ambulatory or neurological deficits. (R. 22)

The ALJ afforded "little weight" to Dr. Synowiec's opinion. Synowiec opined that Muller cannot be expected to maintain regular employment. (R. 592) She stated that because of his neurological condition and the side effects of his medications, he

---

[2] Dr. Snyder never opined that *the most* Muller could perform was a desk job. Further, as the ALJ noted, Snyder's clinical findings did not show imbalance, incoordination, or ambulatory or neurological deficits. (R. 22) As such, any such endorsement would be at odds with her clinical findings.

6

experiences vertigo, headaches, light and sound sensitivity, and cognitive slowing. (R. 592) The ALJ properly rejected Synowiec's statement regarding the inability to work because, as stated above, a finding of disability is an issue reserved for the Commissioner. *Chandler*, 667 F.3d at 362. Further, as the ALJ noted, Synowiec's conclusions are contradicted by her records. Synowiec's office notes indicate that Muller "*rarely* has the episodic, more severe vertigo with-type symptoms." (R. 586) (emphasis added) Additionally, Muller presented to Synowiec with intact cranial nerves, full motor strength, intact sensation, normal reflexes, normal coordination and normal gait. (R. 22, 587, 590, 605, and 608) Finally, Synowiec authored her opinion in August of 2016. (R. 592) As the ALJ observed, Muller did not take any prescribed medication or have focused treatment since that date. (R. 21) Accordingly, the ALJ correctly determined that Synowiec's "opinions are not an accurate depiction of the claimant's longitudinal functional capacity through the present." (R. 22)

Finally, the ALJ gave "significant weight" to the opinion proffered by Dr. Fox, the state agency medical consultant. (R. 22) Fox noted that Muller can drive, he cares for his personal needs and performs routine household activities, that his symptoms have improved and that recent neurological examinations have been within normal limits. (R. 60) Ultimately, he found that Muller could perform work at all exertional levels subject to certain postural and environmental restrictions. (R. 59) That is, Dr. Fox found that Muller should never climb ladders / ropes / scaffolds and should only occasionally balance, stoop, kneel and crawl and should avoid exposure to all hazards due to disequilibrium. (R. 59-60) Muller urges that the ALJ erred in according "significant weight" to Dr. Fox's opinion while at the same time failing to incorporate his postural restrictions in the RFC.

7

After careful consideration, I find no error. First, the ALJ did not incorporate Dr. Fox's postural limitations into the RFC. Giving an opinion "significant weight" does not translate into adopting everything that is included in an opinion. *See Reeves v. Comm'r. of Soc. Sec.*, 618 Fed. Appx. 267, 275 (6th Cir. 2015) (stating that "[e]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.") Second, to the extent that the ALJ endorsed these limitations, he did, in fact, consider whether the limitations eroded the occupational base. The ALJ acknowledged the absence of these limitations, but cited to SSRs 83-14, 85-15 and 96-9p in support of the proposition that Dr. Fox's postural opinions would not significantly erode the occupational base for light work. As the Commissioner points out, it appears that at least two of the jobs the VE identified, marker and router, do not require balancing, stooping, kneeling, crawling or crouching. *See* Marker, 1991 WL 671802 and Router, 1991 WL 672123. Consequently, I find no basis for remand.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVAN JOSEPH MULLER | ) | |
|     Plaintiff, | ) | |
|   -vs- | ) | Civil Action No. 19-135 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| | ) | |
|     Defendant. | ) | |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 3rd day of February, 2020, it is hereby ORDERED that the Motion for Summary Judgment (Docket No. 15) is GRANTED and the Motion for Summary Judgment (Docket No. 9) is DENIED. It is further ORDERED that the Clerk of Courts mark this case "Closed" forthwith.

                                                    BY THE COURT:

                                                  /s/ Donetta W. Ambrose
                                                  Donetta W. Ambrose
                                                  United States Senior District Judge